871 F.2d 556
 130 L.R.R.M. (BNA) 3197, 57 USLW 2611,
4 Indiv.Empl.Rts.Cas. 368
 AMERICAN POSTAL WORKERS UNION, COLUMBUS AREA LOCAL AFL-CIO;
Rodney Sampson; Lisa Vest; Elizabeth Scott;
David Dixon; James Mackey; and Dan
Foster, Plaintiffs-Appellants,
v.
UNITED STATES POSTAL SERVICE; Preston Robert Tisch,
Postmaster General; Thomas G. Brulport; and Don
W. Peterson, Defendants-Appellees.
 No. 87-4020.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 4, 1988.
Decided March 27, 1989.
 
 Leonard S. Sigall (argued), Reynoldsburg, Ohio, for plaintiffs-appellants.
 Al Ritcher, Asst. U.S. Atty., Columbus, Ohio, Kevin B. Rachel, U.S. Postal Service Office of Labor Law, Washington, D.C., Nanette R. Everson, Sp. Counsel to Asst. Atty. Gen., Civil Div., Dept. of Justice, Washington, D.C., Leonard Schaitman, Robert V. Zener (argued), Appellate Staff, Civil Division, Washington, D.C., for defendants-appellees.
 Before KENNEDY and KRUPANSKY, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 KRUPANSKY, Circuit Judge.
 
 
 1
 The plaintiffs-appellants in this class action, the American Postal Workers Union, Columbus Area Local, AFL-CIO (Postal Union) and six named individual postal employees representing a class of some 1650 Columbus, Ohio postal employees (referred to collectively as "plaintiff class" or "plaintiffs"), have appealed from the district court's judgment following a bench trial in favor of the defendants-appellees, the United States Postal Service ("Postal Service"), the Postmaster General, Postal Inspector Thomas Brulport ("Brulport"), and the Director of Mail Processing, Don W. Peterson ("Peterson") (collectively referred to as the defendants) in this action requesting injunctive relief and monetary damages against the defendants as a result of a search that had been conducted on January 15, 1983 of postal employees lockers, which the plaintiffs alleged violated their Fourth Amendment constitutional rights to be free from unreasonable searches and seizures.
 
 
 2
 The operative facts in this case, as found by the district court in its memorandum opinion and order of October 7, 1987 following a trial before the bench, are easily summarized. American Postal Workers Union v. United States Postal Serv., 671 F.Supp. 497 (S.D.Ohio 1987). Each postal employee who had requested the use of a locker within the Columbus Post Office had completed and signed the following waiver, denominated Postal Service Form 4943, which specifically provided that the lockers were subject to random inspection by authorized postal authorities:
 
 NOTICE
 
 3
 IN THE ASSIGNMENT OF THIS LOCKER THE UNDERSIGNED UNDERSTAND THAT:
 
 
 4
 1. The use by other than the person listed, or exchanging with another employee without authority of the issuing office, is prohibited.
 
 
 5
 2. Locker must be clean and presentable and is only for official use. A personal lock is not permitted.
 
 
 6
 3. Disciplinary action may be taken for noncompliance.
 
 
 7
 4. Locker is subject to inspection at any time by authorized personnel. (Part 643 PSM)
 
 
 8
 5. Upon separation or transfer, the locker key must be returned, or final check may be withheld.
 
 
 9
 Postal Service Form 4943, reprinted in American Postal Workers Union, 671 F.Supp. at 499 (emphasis added).[1]
 
 
 10
 In addition, the collective bargaining agreements applicable to the named plaintiffs in this action, which included ninety percent of the postal employees at the Columbus Post Office, provided for random inspection of the lockers under specified circumstances. The applicable collective bargaining provision effective during the time period relevant to the case at bar stipulated:
 
 INSPECTION OF LOCKERS
 
 11
 The Employer agrees that, except in matters where there is reasonable cause to suspect criminal activity, a steward or the employee should be present at any inspection of employees' lockers. For a general inspection where employees have had prior notification of at least a week, the above is not applicable.
 
 
 12
 Collective Bargaining Agreement of 1981-84, reprinted in American Postal Workers Union, 671 F.Supp. at 500.
 
 
 13
 It is undisputed that postal employees had stored personal items inside their lockers, including purses, lunch boxes, briefcases, items of clothing, papers, photographs, medications and personal hygiene products. The lockers were equipped with a built-in locking mechanism, to which the Postal Service had retained duplicate keys. Most employees had secured their lockers.[2]
 
 
 14
 In October, 1982, the Postal Inspection Service had learned of possible illicit drug traffic and use within the Columbus postal facility. During that month Postal Service Inspectors and maintenance workers had located a marijuana cache in an elevator and had received numerous anonymous tips of cocaine use during working hours. Several postal managers had reported that they had received complaints from postal employees that certain personnel were dealing drugs at the Columbus facility.
 
 
 15
 In addition to the reports of drug activity, postal inspectors had also received information which disclosed that a number of postal employees had concealed weapons on their person during their working hours, and several bullets and shell casings had been recovered from the floor of the workroom. The postal medical examiner had reported that postal employees had appeared to be working while under the influence of intoxicants. Moreover, there had been increased incidents of absenteeism and physical altercations during working hours. The rate of human error in monitoring the mechanical equipment had also significantly increased during this same time period.
 
 
 16
 The President of the Local Chapter of the American Postal Workers Union, Krystal Cooper (Cooper), had submitted, to the Postal Inspection Service, a list of some fourteen named postal employees suspected of using or dealing in illegal drugs while at work. The Postal Inspector in charge of the Cincinnati Division of the Postal Inspection Service, David Madden (Madden), concluded that, based upon the above information, an unannounced inspection of employee lockers at the Columbus Post Office was in order. Madden had assigned Postal Inspector Brulport the responsibility of conducting the investigation. Brulport had scheduled a locker search for January 15, 1983 at 1:00 a.m., because most drug related incidents had occurred during the late night shift (10:00 p.m. through 8:00 a.m.).
 
 
 17
 Prior to that date, no large scale locker inspection had been conducted at the Columbus facility, and the searches which had been implemented had been limited to the inspection of various individual lockers. Preliminary to such searches, a written notice had been posted at least one week in advance, advising the affected employees that their lockers would be opened and inspected on a designated date which had permitted the employees to remove any personal items beforehand.
 
 
 18
 No such announcement of the January 15, 1983 search had been noticed. On the designated date, Brulport had organized teams of postal inspectors to open and inspect the lockers of all postal employees.[3] The Columbus postal management had supplied the postal inspection teams with duplicate keys to open the lockers. Specific arrangements had been made for five union stewards to accompany the five search teams during the inspection of the lockers. The search teams had been instructed that the purpose of the search was to discover illegal drugs (particularly marijuana, cocaine and heroin), weapons, alcohol, stolen mail and postal property or other contraband. At the same time, Brulport had expressly advised the inspection teams that sealed items, such as briefcases and purses, were not to be opened or searched. The postal inspectors had been assisted by the Columbus Police Department which had furnished a dog trained to detect controlled substances, together with the dog's trainer. The dog had been used to examine some five hundred lockers before it tired and became ineffective.
 
 
 19
 The five union stewards had been present during the time the lockers were searched by the inspection teams. The district court concluded that the postal inspectors had not opened any sealed containers or packages located in any locker. The locker searches had ultimately yielded five hundred eighty-two pieces of mail illegally stored in one locker; intoxicants in three additional lockers; a file box which contained gambling records; and postal property in another locker.
 
 
 20
 Subsequent to this inspection, the American Postal Workers Union, Columbus Area Local and six named representative postal employees,[4] representing the class of postal employees whose lockers had been searched at the Columbus Post Office, initiated this action in the United States District Court for the Southern District of Ohio alleging that the named defendants[5] had violated the Fourth Amendment rights of the plaintiff class by conducting unreasonable searches of the postal employees' lockers. The plaintiffs requested monetary and injunctive relief pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).
 
 
 21
 On January 19, 1984, the district court dismissed all of the plaintiffs' claims for monetary damages. The district court concluded that a Bivens action for damages, stemming from a violation of constitutionally protected rights, was not available against the Postal Service. See, e.g., Carlson v. Green, 446 U.S. 14, 18-19, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980); see also Schweiker v. Chilicky, --- U.S. ----, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); Bush v. Lucas, 462 U.S. 367, 373, 103 S.Ct. 2404, 2409, 76 L.Ed.2d 648 (1983); Chappell v. Wallace 462 U.S. 296, 299-300, 103 S.Ct. 2362, 2365, 76 L.Ed.2d 586 (1983). The district court further concluded that the individually named defendants were not liable for monetary damages under the affirmative defense of qualified immunity. See, e.g., Anderson v. Creighton, 483 U.S. 635, 646, 107 S.Ct. 3034, 3042, 97 L.Ed.2d 523, (1987); see also Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Hall v. Medical College, 742 F.2d 299, 309 (6th Cir.1984), cert. denied, 469 U.S. 1113, 105 S.Ct. 796, 83 L.Ed.2d 789 (1985).
 
 
 22
 The remaining claims for declaratory and injunctive relief were then tried to the district court on April 30, 1987. It issued its findings of fact and conclusions of law in a memorandum opinion and order dated October 8, 1987. American Postal Workers Union, AFL-CIO v. United States Postal Serv., 671 F.Supp. 497 (S.D.Ohio 1987). Relying upon the waiver signed by each of the postal employees, along with the pertinent provision of the collective bargaining agreement providing for random searches of the postal employees' lockers, the district court concluded that the locker inspection at issue did not violate any Fourth Amendment rights of the plaintiff class. The district court indicated that the waivers and the collective bargaining provision had served to negate any "expectation of privacy that society is prepared to consider reasonable," United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) and, consequently, the searches in question were not unreasonable under the Fourth Amendment. The district court accordingly granted judgment in favor of the named defendants.
 
 
 23
 The plaintiffs timely perfected an appeal from the district court's judgment.
 
 
 24
 The plaintiff class has urged that the district court erred in concluding that the locker searches at issue did not violate the Fourth Amendment's prohibition against unreasonable searches and seizures. The Fourth Amendment recognizes and protects those items or places which are reasonably entitled to an expectation of privacy. See, e.g., United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). Generally, employees, including those who worked in the public sector, have been considered to possess a reasonable expectation of privacy in their possessions and work stations. O'Connor v. Ortega, 480 U.S. 709, 715, 107 S.Ct. 1492, 1497, 94 L.Ed.2d 714 (1987) (plurality opinion) ("Searches and seizures by government employers or supervisors of the private property of their employees, therefore, are subject to the restraints of the Fourth Amendment."); see also Mancusi v. DeForte, 392 U.S. 364, 368-69, 88 S.Ct. 2120, 2123-24, 20 L.Ed.2d 1154 (1968).
 
 
 25
 At the same time, however, "[p]ublic employees' expectations of privacy in their offices, desks and file cabinets, like similar expectations of employees in the private sector, may be reduced by virtue of actual office practices and procedures, or by legitimate regulation." O'Connor, 480 U.S. at 717, 107 S.Ct. at 1498; Mancusi, 392 U.S. at 370, 88 S.Ct. at 2123-24 ("[T]he Union or some of its officers might validly have consented to a search [of employees' business office and possessions]."). "The employee's expectation of privacy must be assessed in the context of the employment relation" and "the question of whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis." O'Connor, 480 U.S. at 717-18, 107 S.Ct. at 1498.
 
 
 26
 In the case at bar, the Postal Service had adopted regulations which expressly declared that all government owned property, including the postal employees' lockers, "are at all times subject to examination and inspection by duly authorized postal officials in the discharge of their official duties." Section 774.12 of the Postal Services Administrative Support Manual, reprinted in American Postal Workers Union, 671 F.Supp. at 500. Each postal employee hired since 1973 had signed a Notice and Waiver Provision upon receiving a postal locker. That Notice stated, inter alia, that the "[l]ocker is subject to inspection at any time by authorized personnel." Locker Notice, reprinted in American Postal Workers Union, 671 F.Supp. at 499 (emphasis added).
 
 
 27
 Furthermore, the collective bargaining agreements governing the postal employees represented in this class action provided that the employee lockers were subject to search at any time so long as "there is reasonable cause to suspect criminal activity, [or] a steward of the employee [is] given the opportunity to be present at any inspection." Collective Bargaining Agreement of 1981-84, reprinted in American Postal Workers Union, 671 F.Supp. at 500. In the instant case, both of these alternative provisions were satisfied. The postal authorities had received several reports of drug use and sale in the building; the postal physician had indicated that a number of employees had been and were apparently abusing substances during working hours; bullets and ammunition casings had been retrieved from the floor of the locker room and other indications of possible illegal conduct had been noted. This satisfied the terms of the collective bargaining agreement and, accordingly, justified a search of the lockers, even without supervision by union representatives.
 
 
 28
 In the alternative, even if there had not been evidence of potential criminal activity, the postal authorities had arranged to search the lockers in the presence of union stewards. This procedure was in accord with the terms of the collective bargaining agreement, independent of any justification based upon suspected criminal violations. The district court therefore correctly concluded that, in light of the clearly expressed provisions permitting random and unannounced locker inspections under the conditions described above, the collective class of plaintiffs had no reasonable expectation of privacy in their respective lockers that was protected by the Fourth Amendment.
 
 
 29
 The plaintiff class, however, has urged this court to conclude that the employees had an expectation of privacy in their lockers irrespective of provisions of the waiver and the terms and conditions of the collective bargaining agreement, because the employee locker room along with the bathrooms were the only areas in the building where they had not been subjected to constant scrutiny. (All other areas of the building had two way mirrors, permitting postal authorities to observe the employees undetected at any time.) Additionally, the plaintiff class argued that because the postal authorities had never conducted searches of all employee lockers in the past, except in cases where prior written notice had been provided, the "actual office practices and procedures," O'Connor, 480 U.S. at 717, 107 S.Ct. at 1498, supported a finding of an expectation of privacy in the lockers.
 
 
 30
 This argument ignores the fact that the postal service had been expressly authorized to conduct locker inspections at any time, thus reserving the right to do so on a random basis. The failure of the postal service to implement this particular authority in the past did not negate the explicit provisions of the grant. The collective bargaining agreement specifically authorized inspections of postal employee lockers, with or without notice, under circumstances where there was reasonable cause to suspect criminal activity or where a union steward was permitted to monitor the search, both of which conditions had been satisfied in the instant case.
 
 
 31
 Finally, the plaintiff class challenged the district court's conclusion that no search of closed containers had occurred during the locker inspections at issue, arguing that the search of such containers would constitute a violation of the Fourth Amendment regardless of any authority to conduct general locker searches. Conflicting evidence was introduced concerning this charge. It is well settled that a district court's factual findings may be overturned upon review only if they are clearly erroneous. See Fed.R.Civ.P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous...."). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 499, 104 S.Ct. 1949, 1959, 80 L.Ed.2d 502 (1984) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed.2d 746 (1948)); accord Connaughton v. Harte Hanks Communications, Inc., 842 F.2d 825, 829 (6th Cir.1988), petition for cert. granted, --- U.S. ----, 109 S.Ct. 257, 102 L.Ed.2d 245 (1988).
 
 
 32
 Testimony to support the plaintiffs' assertions was provided, during the bench trial, by the union monitoring stewards' observations, who testified that the postal inspectors had searched the contents of purses, briefcases, lunch boxes and clothing. Contrary testimony was provided by postal inspector Brulport, who advised that he had specifically instructed his agents that they were not to search closed containers, purses or pockets of apparel. Inspector Parrott's testimony confirmed that of Brulport and verified that the search had been conducted in accordance with the directions. Additional testimony of observers stated that at no time were the postal authorities observed searching closed containers or the contents of clothing pockets. Testimony also indicated that although five vials of pills were temporarily confiscated during the locker searches, they were neither opened nor analyzed and were later returned to their owners in their original condition.
 
 
 33
 The district court credited the testimony of the postal inspectors and the witnesses who had observed the inspection, and concluded that no search of closed containers or packages had occurred. The district court's conclusion that the postal inspectors did not open sealed containers or items of clothing during the locker searches was not clearly erroneous and accordingly will not be disturbed upon appellate review.[6]
 
 
 34
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 35
 George Clifton EDWARDS, Jr., Senior Circuit Judge, concurring.
 
 
 36
 The issue in this case is whether or not the U.S. Postal Inspectors had a right to make a warrantless search of over 1650 employee lockers. The inspectors were concerned about alleged drug use among employees. The search disclosed no drugs or evidence of drug sales.
 
 
 37
 It is my view that searches of this nature are appropriate but should be performed after application for and the issuance of a search warrant. Indeed, I read the Fourth Amendment to the U.S. Constitution to require such a search warrant. That amendment reads:
 
 
 38
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no Warrant shall issue, but upon probable cause supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
 
 
 39
 The Fourth Amendment right to a reasonable search can, however, be waived. The employees hired after 1973 expressly waived their rights under the Fourth Amendment when they signed Postal Service Form 4943, which reads in part ... "4. Locker is subject to inspection at any time by authorized personnel." All of the named plaintiffs in the instant case signed the 1973 version of the form.[1]
 
 
 
 [1]
 The above quoted waiver had been employed by the Postal Service since 1973. It is undisputed that all of the named plaintiffs representing the class of postal workers in the instant action had signed the form hereinbefore identified. In addition, the administrative manual of the Postal Services provided that all property furnished by the Postal Service for the use of its employees was subject to inspection by authorized postal officials
 .12 EXAMINATIONS AND INSPECTIONS.
 All USPS-owned or furnished property under the custody or control of the Postal Service, including that individually assigned to postal personnel, is for official use only. This property, and its contents, are at all times subject to examination and inspection by duly authorized postal officials in the discharge of their official duties. The Chief Postal Inspector, officers and heads of installations, and their designated representatives, are authorized to examine and inspect, as their duties may require, such USPS-owned or furnished property and its contents.
 Postal Services Administrative Support Manual Sec. 774.12, reprinted in American Postal Workers Union, 671 F.Supp. at 500 (emphasis added).
 
 
 [2]
 There was evidence that approximately six employees had attached personal locks to their lockers in violation of the waiver form which prohibited the use of such devices. During the search at issue in this case, the postal inspectors forcibly removed the personal locks
 
 
 [3]
 It was originally envisioned that all lockers located in the Columbus Post Office were to be searched that night. However, the procedure had taken more time than had been anticipated and the search had been terminated after approximately one thousand six hundred and forty seven lockers had been examined
 
 
 [4]
 The individual representative employees were Rodney Sampson; Lisa Vest; Elizabeth Scott; David Dixon; James Mackey; and Dan Foster
 
 
 [5]
 The defendants named in the complaint were the United States Postal Service; the Postmaster General, Preston R. Tish; Columbus Director of Mail Processing, Don Peterson; and Postal Inspector, Thomas Brulport
 
 
 [6]
 Because this court concludes that the locker searches joined in the instant appeal did not violate any proscription of the Fourth Amendment, it is unnecessary to examine the plaintiffs' additional arguments that the district court erred in concluding that no Bivens action would lie against the Postal Service, and that the individual named defendants were entitled to the affirmative defense of qualified immunity under the circumstances presented in this case
 
 
 [1]
 However, it may well be that employees hired prior to 1973 do have a legitimate claim to allege a violation of their Fourth Amendment rights. Prior to 1973, Form 4943 did not contain an explicit warning that lockers were subject to search. There was no evidence as to just how many employees were assigned their lockers before 1973 or how many of them, if any, were included in the search