UNITED STATES of America, Plaintiff–Appellee,

v.

Horace R. BROADUS, Defendant–Appellant.

No. 92–2077.

United States Court of Appeals, Sixth Circuit.

Argued June 17, 1993.

Decided Sept. 14, 1993.*

---

* This decision was originally issued as an "unpublished decision" filed on September 14, 1993. On October 1, 1993, the court designated the opinion as one recommended for full-text publication.

Christopher P. Yates (argued and briefed), Office of the U.S. Atty., Detroit, MI, for plaintiff-appellee.

Joseph P. Zanglin (argued and briefed), Detroit, MI, for defendant-appellant.

Before: MERRITT, Chief Judge; and GUY and BATCHELDER, Circuit Judges.

MERRITT, Chief Judge.

Horace R. Broadus, a Detroit postal worker, appeals his conviction on three counts of distributing crack cocaine under 21 U.S.C. § 841(a)(1). The charges against the defendant arose from a United States Postal Inspector's investigation of whether postal worker Clarence Welch was selling drugs during his shift at the main post office in Detroit. In connection with this investigation, the Postal Inspector hired Michael Robinson who, posing as a halfway house resident seeking to buy and sell drugs, made several cocaine purchases at the post office.

On September 20, 1990, defendant sold eight rocks of crack cocaine to informant Robinson for $200. On September 25, 1990, defendant again sold Robinson eight rocks of crack cocaine and defendant gave Robinson his telephone number and told him to call him directly in the future. On September 27, 1990, Robinson and an undercover Detroit police officer met defendant and bought cocaine from him. The Postal Inspectors captured all of these transactions in photographs and on audio tapes.

The eight count indictment charged defendant, Welch and another postal worker with distribution of cocaine and with aiding and abetting. Defendant was named in counts Two through Seven, and was acquitted on counts Two, Three and Seven, but convicted on counts Four, Five and Six for the cocaine transactions occurring on September 20, 25 and 27, 1990, respectively. On appeal, defendant asserts five errors.

## I.

Defendant first challenges the district court's method of allocating peremptory challenges during the jury selection process. The district judge used a "use it or lose it" system, which the parties agreed to before the trial, in which she seated fourteen prospective jurors, questioned them and allowed the parties to question them, then allowed the defense to exercise two of its peremptory challenges and the government one. When the challenged jurors were replaced, there was more questioning and the defense was again allowed to exercise two challenges and the government one. This went on for five rounds. During the fourth round, defendant's counsel used one of the peremptory challenges available to him at that point, but passed on the second challenge. After defendant's counsel used both of the challenges available to it in the fifth round, the judge told him that he had no more peremptory challenges left. The defense had used nine challenges. The judge did not allow either side an extra peremptory challenge for alternate jurors, and after jury selection she seated fourteen jurors, all of whom heard the case. Just prior to sending the jury off to deliberate, the judge drew two who then became alternates.

Defendant claims this system denied him (1) one of the ten peremptory challenges to which he is entitled under Fed.

R.Crim.P. 24(b), and (2) the one extra peremptory challenge to which he is entitled under Fed.R.Crim.P. 24(c) when two alternate jurors are seated. Taking the 24(c) claim first, defendant did not object to the alleged denial of his right to challenge alternates at any time during the jury selection process or during the trial. Because of his failure to make an objection to the jury selection system at the trial, defendant has waived his opportunity to challenge it on appeal. *See, e.g., Peretz v. United States,* — U.S. —, —, 111 S.Ct. 2661, 2669, 115 L.Ed.2d 808 (1991) (stating that even the most basic rights of criminal defendants are subject to waiver and citing an array of cases where fundamental rights were not preserved for appeal); *Yakus v. United States,* 321 U.S. 414, 444, 64 S.Ct. 660, 677, 88 L.Ed. 834 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it"); *United States v. Causey,* 834 F.2d 1277, 1283 (6th Cir.1987), *cert. denied,* 486 U.S. 1034, 108 S.Ct. 2019, 100 L.Ed.2d 606 (1988) (stating the "inveterate rule" of this Court that it will not reverse on grounds not raised in the trial court (quoting *United States v. McDowell Contractors, Inc.,* 668 F.2d 256, 257 (6th Cir. 1982))). Any possible error is not sufficient to bring this case under the "plain error" exception to this rule provided by Fed. R.Crim.P. 52(b).[1]

■ Defendant's 24(b) claim is also without merit. First, defendant's counsel

agreed to the district court's "use it or lose it" system of jury selection before the trial. Second, even if we assume that defendant's counsel's "exception" to the jury selection system after the fifth and final round of peremptory challenges was a proper objection,[2] it was untimely because defendant's counsel knew about the system before jury selection started but waited until jury selection was essentially complete to object. Finally, the "use it or lose it" system was not unfair to the defendant and thus the district court did not abuse the sound discretion we have traditionally accorded it in this area. *See, e.g., United States v. Mosely,* 810 F.2d 93, 96 (6th Cir.1987).

## II.

■ Defendant's second claim is that a warrantless search of a post office locker he shared with another worker violated his Fourth Amendment rights. On January 14, 1991, after defendant had been arrested and released on bond, Postal Inspector Greg Hannah searched the unlocked locker shared by defendant and another postal employee, Darryl Stuart. The Inspector did not have a warrant for the search, but the locker was signed out in Stuart's name only, and Stuart had signed the standard U.S. Postal Service Form 4943, which said that the "[l]ocker is subject to inspection at any time by authorized personnel." As a result of the search, the Postal Inspector found half a gram a cocaine in the pocket of defendant's coat. This cocaine formed the basis for Count Seven of the indictment, and was admitted into evidence at trial over defendant's objection.

---

1. We note in passing, however, that although the manner in which peremptory challenges are to be used is "a matter of local custom and traditionally has been left to the sound discretion of the district court," *United States v. Mosely,* 810 F.2d 93, 96 (6th Cir.), *cert. denied,* 484 U.S. 841, 108 S.Ct. 129, 98 L.Ed.2d 87 (1987) (citing cases), it is difficult to reconcile the method by which the judge selected the two alternate jurors in this case with the requirements of Rule 24(c). The district judge seated fourteen presumptive jurors and drew two alternates from this group just prior to jury deliberations. The judge did not allow an extra peremptory challenge during the jury selection process, and all fourteen jurors, including the two who later became alternates, were subject to the peremptory challenges allowed for regular jurors. At oral argument,

Mr. Yates explained that this system of waiting until just prior to jury deliberations to select alternates encourages all jurors to pay closer attention to the trial. While this may be true, Rule 24(c) provides that each side is entitled to an extra peremptory challenge when two alternates are seated, that this extra challenge is not to be used against regular jurors, and that the ten challenges allowed for regular jurors are not to be used against alternates. Fed.R.Crim.P. 24(c).

2. After the final round of peremptory challenges, defendant's attorney, Mr. Zanglin, stated: "I think, the only thing is, I have only used nine challenges so I'm just going to take exception that I'm stuck because I passed."

■ Defendant's claims that the search of the locker in general, and the search of his coat pocket in particular, violated his Fourth Amendment rights are without merit. In *American Postal Workers Union v. United States Postal Service*, 871 F.2d 556 (6th Cir. 1989), this Court upheld a warrantless search of postal lockers for drugs when the locker users had signed the exact waiver form Stuart signed in this case. Further, a third party who possesses common authority over or other sufficient relationship to the place sought to be searched may validly consent to a search. *See, e.g., United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974); *United States v. Karo*, 468 U.S. 705, 726, 104 S.Ct. 3296, 3309, 82 L.Ed.2d 530 (1984) (O'Connor, J., concurring).

■ Defendant's contention that even if he had no reasonable expectation of privacy in the locker, he retained such an interest in the pockets of his jacket inside that locker goes too far. It strains credulity to imagine that the waiver form Stuart signed authorized the Postal Inspectors to search the locker, but not to examine the contents of the locker. One does not have a reasonable expectation of privacy in an outer jacket pocket placed in another person's unlocked locker at a large post office, especially when one is a seven-year postal employee who knew that the lockers are subject to search at any time.

### III.

■ Defendant's third claim is that the district court erred by allowing Postal Inspector Greg Fiorina to testify at his trial to the telephone number defendant gave during a post-arrest interview. Defendant claims that because he had not yet been given *Miranda* warnings when he told Fiorina his telephone number, the admission of this evidence violated his rights under the Fifth and Sixth Amendments

The interview at which defendant stated his telephone number was part of the Postal Inspector's routine booking process, and the question regarding defendant's telephone number was posed to elicit information to complete a blank on a standard form. Questions posed "to secure the personal history data necessary to complete the booking process, are exempt from *Miranda*'s coverage." *United States v. Clark*, 982 F.2d 965, 968 (6th Cir.1993). Absent evidence that "the police used the booking questions to elicit incriminating statements from the defendant, routine biographical questions are not ordinarily considered interrogation." *Id.* (citing *United States v. Avery*, 717 F.2d 1020, 1025 (6th Cir.1983), *cert. denied*, 466 U.S. 905, 104 S.Ct. 1683, 80 L.Ed.2d 157 (1984)).

Defendant claims the telephone number was incriminating because it helped the government clear up a discrepancy between a number the government informant wrote down during a transaction with defendant and the number the jury heard on the audio tape of the same meeting. Since the Postal Inspectors already had the tapes of the drug transactions in their possession at the time of the post-arrest interview, defendant contends that the telephone number question was an attempt to elicit what Fiorina knew would be incriminating information.

From the trial transcript, however, it is evident that the government only called Fiorina to testify to the telephone number after defendant's counsel attempted to make an issue out of the discrepancy between the number stated by the defendant on the tape and the number written down by the government informant. There is no indication that Fiorina should have known the routine question might elicit incriminating information or that the government even considered the telephone number incriminating until well into the trial. Thus, the question about defendant's telephone number falls within the "routine booking question" exception to the *Miranda* requirement, and Fiorina's testimony at trial was proper.

### IV.

■ Defendant's fourth claim is that the district court improperly limited his cross-examination of Postal Inspector Gary Grant and government informant Michael Robinson in violation of his rights under the Confrontation Clause of the Sixth Amendment.

Inspector Grant testified on direct examination about how the government used confi-

dential informants, how they were paid, and how the government had used informant Robinson in the past. Defendant's counsel asked on cross-examination if Robinson was also an informant for the Detroit Police Department and the court sustained the government's objection that the question was outside the scope of the case. The court also sustained the government's objection to defendant's question to Grant about when informant Robinson began recovery from his drug addiction because it called for hearsay and because Robinson himself had testified.

On cross-examination of Robinson, defendant's counsel attempted to delve into Robinson's history as a drug addict and his experience as a government informant. The court restricted this questioning to the past four years, the time Robinson had been an informant for the Postal Service, even though there was evidence that he had served as an informant for other government agencies in the past. The court stated that questions about the past 20 years would be more prejudicial than probative and noted that the fact that Robinson had been an informant for a long time was already before the jury.

While the Confrontation Clause guarantees an opportunity for effective cross-examination, "[t]rial judges retain wide latitude 'to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *United States v. Blakeney*, 942 F.2d 1001, 1022 (6th Cir.), *cert. denied*, ——— U.S. ———, 112 S.Ct. 646, 116 L.Ed.2d 663 (1991) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986)). Defendant acknowledges that this Court should apply an abuse of discretion standard in reviewing this issue, but claims that the district court abused its discretion.

In light of the substantial impeaching information that defendant was allowed to elicit from the two witnesses on cross-examination and the sound evidentiary reasons for sustaining the objections to defendant's questions, it is clear that the district court did not abuse its discretion. The district court did not limit defendant's cross-examination in any meaningful way.

## V.

Defendant's final claim is that the district court's admission of an audio tape of a conversation in which he made a reference to a drug related killing was prejudicial and irrelevant, and should result in a new trial. Specifically, defendant objects to the tape of an October 4, 1990 conversation between informant Robinson and himself in which defendant referred to a man named Rick who was involved in a shoot out and "took somebody else out." Defendant claims this evidence was irrelevant under Fed.R.Evid. 402, and prejudicial under Fed.R.Evid. 403.

This conversation may have been relevant to establish the relationship between defendant and informant Robinson. It did not implicate the defendant in any killing. The mere fact that defendant knew someone who was involved in a drug killing would not prejudice a jury against him.

## VI.

We find no merit to any of defendant's claims. For the foregoing reasons, the judgment of the district court is AFFIRMED.