**UNITED STATES of America, Plaintiff,**

v.

**D-1 Sandra LOPEZ a/k/a Tracy Blaisdell and D-2 Rene Cardona, Defendants.**

**Criminal No. 95–50010.**

United States District Court, E.D. Michigan, Southern Division.

Jan. 31, 1996.

Daniel D. Bremer, Burton, MI, Gregory T. Gibbs, Flint, MI, Michael P. Manley, Manley & Manley, Flint, MI, for Rene Cardona.

Joan E. Morgan, Detroit, MI, David I. Goldstein, Ann Arbor, MI, for Sandra Lopez.

Nancy A. Abraham, U.S. Attorney's Office, Flint, MI, for the U.S.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AND FOR DISCOVERY, ADOPTING THE JULY 26, 1995 ORDER OF MAGISTRATE JUDGE GOLDMAN, AND GRANTING MOTION TO SEVER

GADOLA, District Judge.

Defendants, Sandra Lopez and Rene Cardona, have been charged in a two count

indictment with possession with the intent to distribute cocaine and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2(a), and conspiracy to distribute cocaine under 21 U.S.C. § 846. Presently before the court are several pretrial motions, including both defendants' motions to dismiss the indictment, motions for discovery, Cardona's objections to the July 26, 1995 Order of Magistrate Judge Goldman, and Cardona's motion to sever. This court will address these motions seriatim following a recitation of the relevant facts.

## I. Background

On January 20, 1995 officers of the Flint Police Department received a tip from a man identifying himself as Derrick Campbell and stating that he was approached by a man named Gonzales (later identified as Rene Cardona) at the Hampton Inn in Flint on January 18, 1995. Campbell reported that Gonzales initially offered to sell him an eighth of a kilo of cocaine for $3,600, and then offered to front Campbell the cocaine when Campbell refused. Campbell also reported that Gonzales gave him his pager number and told him that he was staying in room 524 at the Hampton Inn.

Also on January 20, 1995, Sergeant Mark Blough verified that a Claudio Gonzalez from Loraine, Ohio had been staying in room 524 but had moved to room 117. Later, Sergeant Blough observed a man (Rene Cardona) matching the physical description given by Campbell leave room 117.

On January 21, 1995, officers observed Cardona and Lopez leave room 117 carrying a large black suitcase which they placed in the trunk of a cab. Sergeant Blough confirmed that Cardona and Lopez had checked out of the hotel. The officers followed the cab to a parking lot where the cab stopped and Cardona exited. Sergeant Alan McLeod approached Cardona, identified himself as a police officer and conducted a pat down search for weapons. Lopez was also checked for weapons and placed in a separate police car.

Following some preliminary questions, Sergeant Blough asked Lopez if he could search her luggage. Lopez consented to a search of the gym bag placed in the front seat of the cab, but disclaimed ownership of the luggage in the trunk. Lopez then withdrew her consent to the search stating that the gym bag was not hers. Similarly, Cardona initially gave permission to search the luggage in the trunk but withdrew it before a search was conducted.

Sergeant Blough brought his trained narcotics detection dog, Meeta, to the gym bag and the dog alerted positively. Meeta also alerted positively on the trunk area of the cab. The cab driver opened the trunk and Meeta alerted positively on the black suitcase contained therein.

Because he apparently gave inconsistent and inaccurate information about his identity, Cardona was eventually arrested for giving false information to a police officer. Lopez was not arrested, but agreed to go to the police station to resolve the situation. The officers obtained a telephonic search warrant for the gym bag and the luggage and discovered approximately 266 grams of cocaine. Both defendants were arrested for possession with intent to distribute cocaine and were advised of their *Miranda* rights. Lopez agreed to be interviewed, but Cardona refused.

On January 23, 1995 a state felony complaint was issued by the Honorable Nathaniel C. Perry, III, against both defendants for possession with intent to deliver cocaine and conspiracy to deliver cocaine. On February 21, 1995, upon motion by the Genesee County Prosecutor, the state court case against Lopez was dismissed without prejudice. On that same day, the state began its preliminary examination in the case against Cardona. At the conclusion of that testimony, Cardona made a motion to suppress evidence based upon a search and seizure violation which the court took under advisement. On March 21, 1995, when the hearing was continued, the prosecution moved to dismiss the case against Cardona on the ground that the United States Attorney wished to pursue these prosecutions. The district court remarked that the motion to dismiss would precede any ruling on the motion to suppress, but then launched into a lengthy dis-

cussion questioning the propriety of the search.

Both defendants were charged by a federal Grand Jury with possession with intent to distribute cocaine and conspiracy to distribute cocaine on March 17, 1995.

## II. Analysis

### A. Motions to Dismiss the Indictment

■ The defendants raise three arguments in support of their motions to dismiss. First, the defendants contend that the indictment should be dismissed because it violates the Double Jeopardy Clause of the Fifth Amendment. The defendants submit that the "sham prosecution" exception to the dual sovereignty rule bars federal prosecution in this case. Second, the defendants assert that the indictment should be dismissed because the facts of this case demonstrate that the federal charges were brought vindictively. Third, defendant Cardona argues that dismissal is warranted because continuation of this federal prosecution violates the United States Attorney's Petite Policy.[1] The court will discuss these motions in turn.

■ The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." This constitutional protection does not apply to prohibit a subsequent proceeding, however, until jeopardy "attaches" in a prior proceeding. Serfass v. United States, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975). In defining the concept of "attachment," the Supreme Court has held that jeopardy attaches in the case of a jury trial when the jury is empaneled and sworn. Serfass, 420 U.S. at 388, 95 S.Ct. at 1062; Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). In a non-jury trial, jeopardy attaches when the court begins to hear evidence. Serfass, 420 U.S. at 388, 95 S.Ct. at 1062. The ultimate question is whether the defendant has been "put to trial before the trier of facts, whether the trier be a jury or a judge." Id. at 391, 95 S.Ct. at 1064; United States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971).

In this regard, the Supreme Court has held that jeopardy does not attach to initial summary proceedings, even if evidence is presented, because absent a waiver of a jury trial, the trial judge has no authority to determine the guilt or innocence of the defendant. Serfass, 420 U.S. at 391–92, 95 S.Ct. at 1064. Consistent with this principle, the sixth circuit has held that jeopardy does not attach where a state court dismisses a criminal complaint based upon a finding that there was not probable cause to bind the defendant over for trial. United States v. Kendrick, 853 F.2d 492, 495–96 (6th Cir.1988) ("The constitutional provision against double jeopardy can have no application unless the prisoner has, therefore, been placed on trial.").

■ Examination of the facts surrounding the dismissed state court prosecutions clearly demonstrates that jeopardy has not attached in the case of either defendant. Lopez was never "put to trial" or subjected to

1. In a supplemental motion, defendant Lopez claims that the indictment should be dismissed because both Lopez and Cardona were previously charged and convicted in Kent County Circuit Court for possession of less than 25 grams of cocaine, arising out of an offense occurring on November 4, 1993. Without further explanation of the significance of these events, the supplemental motion asserts that it incorporates by reference the arguments contained in the original motion.

This court finds that in addition to a lack of clarity, Lopez' supplemental motion suffers from a lack of merit. It is well established that a conspiracy to commit a crime is separate and distinct from the underlying substantive offense. To this end, the Supreme Court has consistently held that the double jeopardy clause does not bar prosecution for conspiracy even where the acts supporting the conspiracy charge are based on conduct underlying the defendant's prior conviction. See United States v. Felix, 503 U.S. 378, 388, 112 S.Ct. 1377, 1384, 118 L.Ed.2d 25 (1992); Garrett v. United States, 471 U.S. 773, 793, 105 S.Ct. 2407, 2418, 85 L.Ed.2d 764 (1985); Pinkerton v. United States, 328 U.S. 640, 643, 66 S.Ct. 1180, 1181, 90 L.Ed. 1489 (1946). See also United States v. Medina, 992 F.2d 573, 588 (6th Cir.1993) (upholding a prosecution for conspiracy "even though one of the incidents relied upon in the indictment already had resulted in a separate prosecution and conviction."). Any double jeopardy argument that Lopez is attempting to make in her supplemental brief based upon these prior convictions must be rejected.

any risk of a determination of guilt, as there were no state court proceedings against her. The criminal complaint against Lopez was dismissed even before the state prosecutor initiated a preliminary examination. The dismissal of that complaint was not an adjudication on the merits and jeopardy did not attach.

■ Similarly, the case against Cardona was dismissed before jeopardy attached. Although Judge Perry conducted a preliminary examination and expressed his opinion that there was no probable cause to bind Cardona over for trial and that evidence should be suppressed, this was not an adjudication on the merits. At no point did Cardona waive his right to a jury trial or did Judge Perry have the authority to assess Cardona's guilt or innocence. Review of the transcripts of this summary proceeding clearly indicates that Cardona was never placed in jeopardy.

■ Even if this court assumes that jeopardy attached to these state court proceedings, the dual sovereignty doctrine would defeat the defendant's double jeopardy argument. It is well established that double jeopardy does not restrict successive criminal prosecutions in state and federal court, even if the prosecutions are based on the same offenses. *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). This dual sovereignty doctrine is premised in the notion that "an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each." *United States v. Lanza,* 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922). As such, subsequent state and federal prosecutions for the same criminal conduct are not proscribed by the double jeopardy clause, unless the facts of the subsequent prosecution place it within an exception to the dual sovereignty rule.

■ An exception to the dual sovereignty doctrine which is relevant to this case is the "sham prosecution" exception. A majority of courts have interpreted this exception to encompass situations where federal prosecutors have manipulated state processes rendering the state prosecution a "sham" or cover for

an otherwise barred federal prosecution, or where state prosecutors have done the same as a cover for an otherwise barred state prosecution. *See e.g. United States v. Bernhardt,* 831 F.2d 181, 182 (9th Cir.1987); *United States v. Moore,* 822 F.2d 35, 38 (8th Cir.1987); *United States v. Aboumoussallem,* 726 F.2d 906, 910 (2d Cir.1984); *United States v. Aleman,* 609 F.2d 298, 309 (7th Cir.1979).

■ Defendants assert that the sham exception applies where a subsequent federal prosecution is merely an attempt to resurrect an otherwise barred state prosecution. They further contend that the federal indictment is a sham because "federal prosecutors showed no interest whatsoever in prosecuting Defendant, until after the state prosecution failed." This lack of interest by federal prosecutors, the defendants submit, is sufficient to demonstrate that the federal indictment is a sham.

This court firmly disagrees with the defendants' interpretation of the applicable principles of law and with their characterization of the facts surrounding the prior state court criminal proceedings. The record amply shows that federal officials were involved in the investigation and prosecution of these defendants. Indeed, the officers who conducted the search of the luggage had obtained a federal search warrant. Federal prosecutors brought charges against Lopez immediately following the dismissal of the state court prosecution. Federal charges were brought against Cardona once discussions between the United States Attorney's Office and the Genesee County Prosecutor's Office concluded that the case would proceed more efficiently if both defendants were tried together.

Significantly, the federal charges against both defendants were brought before any rulings by the state court. As the record indicates, the Grand Jury returned its indictment on March 17, 1995, four days before Judge Perry made any declarations in the preliminary examination of Cardona concerning the propriety of the search. The defendants simply cannot contend that the federal prosecution in this case is in any way a cover for an otherwise prohibited state court prosecution. The "sham prosecution" exception to

the dual sovereignty doctrine is not applicable in this case.

■ In the alternative, defendants claim that the circumstances surrounding the institution of federal charges warrant dismissal as a vindictive prosecution. Defendants submit that these charges were presented after Judge Perry indicated his intention to dismiss the state court case. As such, defendants argue the federal prosecution was "motivated by the near certainty of dismissal or acquittal in state court" and designed "to accomplish an end run around" this result. As before, this court finds that the defendants mischaracterize the events surrounding the federal charges and overstate the applicability of the legal principles involved.

■ A prosecution is vindictive and violates the Due Process Clause when the prosecutor acts to deter the exercise of a protected right of the defendant. *United States v. Andrews*, 633 F.2d 449, 453–55 (6th Cir.1980). To demonstrate vindictiveness, the defendant must show that the prosecutor has some "stake" in deterring the defendant's exercise of his rights and that the prosecutor's conduct is unreasonable. *United States v. Anderson*, 923 F.2d 450, 453–54 (6th Cir.1991). In the context of pretrial prosecutorial actions, a presumption of vindictiveness is not warranted. *United States v. Goodwin*, 457 U.S. 368, 381, 102 S.Ct. 2485, 2492, 73 L.Ed.2d 74 (1982). As the Supreme Court noted in *Goodwin:*

> A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in *Bordenkircher* [*v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)], the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

*Goodwin*, 457 U.S. at 382, 102 S.Ct. at 2493. Absent a presumption of vindictiveness in this context, the defendant must prove that the prosecutor's conduct was actually vindictive. *Id.* at 384, 102 S.Ct. at 2494.

The defendants have failed to marshall any facts other than their timing argument to demonstrate that the United States Attorney's Office acted vindictively. The record simply discloses nothing to indicate that the motivation of federal officials in bringing charges against Lopez was to retaliate against or deter her exercise of rights. Until the filing of pretrial motions with this court, Lopez had not exercised any constitutional or procedural rights. With respect to Cardona, the record similarly does not substantiate his contention that the decision to prosecute was motivated by the fact that he moved to suppress evidence in the state court preliminary examination. To the contrary, this decision appears to have been based upon a mutual decision by state and federal prosecutors to conduct a joint trial of these defendants at the federal level. This is not contradicted by the comments of Judge Perry at Cardona's preliminary examination, indicating that he would have suppressed the certain evidence. Those statements, made four days after the indictment was returned, do not support Cardona's claim that the federal charges were instituted to retaliate against his exercise of a legal right.

■ Finally, Cardona argues that his indictment should be dismissed because continuation of the federal prosecution violates the United States Department of Justice's Petite policy. *See Petite v. United States*, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960); Dept. of Justice Manual § 9–2.142 (precluding the initiation or continuation of a federal prosecution following a state prosecution ... unless there is a compelling federal interest supporting the dual or successive federal prosecution). Cardona concedes that this policy is not enforceable against the government, but submits that the government's failure to articulate a legitimate non-discriminatory reason for not following the policy in this case constitutes selective prosecution as discussed in *United States v. Davis*, 15 F.3d 902 (9th Cir.1994), and warrants dismissal.

■ This court is not convinced that the *Davis* selective prosecution analysis applies to this situation. By its terms, *Davis* requires a prima facie showing "that the prosecution is based on an impermissible mo-

tive, i.e. discriminatory purpose or intent." *Davis,* 15 F.3d at 910. Cardona has not even attempted to show that the decision to pursue federal charges in this case was motivated by a discriminatory purpose or intent of the type contemplated in *Davis. Davis* does not authorize this court or confer any rights upon a defendant to enforce the Petite policy against the federal government. It has long been clear that the Petite policy is not constitutionally mandated and that it confers no rights upon the accused. *United States v. Frederick,* 583 F.2d 273, 274 (6th Cir.1978). As such, defendants do not have standing to assert violations of this policy. *United States v. Renfro,* 620 F.2d 569, 573, n. 2 (6th Cir.), *cert. denied,* 449 U.S. 902, 101 S.Ct. 274, 66 L.Ed.2d 133 (1980) (citing *Petite v. United States,* 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960)). Cardona's Petite policy and selective prosecution arguments are without merit.

### B. Motions for Disclosure of Impeaching Information

██ Defendants Lopez and Cardona have brought motions requesting the disclosure of impeachment information under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Because these motions are unnecessary, this court will deny them as moot.

*Brady* and its progeny make it clear that the government's duty to produce evidence favorable to the defendant derives from the Due Process Clause. Accordingly, no order of the court is necessary to define or establish this duty. Defense counsel is advised to examine Federal Rule of Criminal Procedure 16 and the standing order of the Eastern District detailing the government's discovery and inspection obligations. By their terms neither Rule 16 nor the standing order of the Eastern District require, or even contemplate, intervention by this court into discovery matters, unless the government fails or refuses to comply with its obligations. The defendants have produced no evidence suggesting that the government has failed to comply fully with its discovery obligations. These motions will be denied. Defense counsel is admonished to consult the governing rules of practice before filing any motions in the future.

### C. Cardona's Objections to the July 26, 1995 Order of Magistrate Judge Goldman

In addition to the motions discussed above, Cardona has filed an objection to the July 26, 1995 Order by Magistrate Judge Marc L. Goldman, denying Cardona's motion to suppress evidence found during the search of his luggage and motion to suppress statements. Cardona insists that evidence of the contraband discovered in his luggage should be suppressed because the police officers lacked probable cause to remove the luggage from the taxi in which the defendants travelled, and that certain statements made in response to questions about his name should be suppressed because they were elicited in the course of an "interrogation" and without *Miranda* warnings.

Pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R.Civ.P. 72(a), and LR 72.1(d)(1) (E.D.Mich. Jan. 1, 1992), this court has reviewed Magistrate Judge Goldman's July 26, 1995 Order denying Cardona's motions to suppress, Cardona's objections to that order and the government's response to those objections. Upon review, this court finds that no part of the magistrate judge's order is clearly erroneous or contrary to law as required by Rule 72(a).

██ Review of the relevant authorities confirms that, as passengers in the taxi, Cardona and Lopez did not enjoy a legitimate expectation of privacy in the trunk of the taxi. *See United States v. Carter,* 14 F.3d 1150, 1155 (6th Cir.1994) (concluding that the mere presence of a passenger's personal items in a vehicle does not give the passenger a legitimate expectation of privacy in that vehicle); *United States v. French,* 974 F.2d 687, 693 (6th Cir.1992) (holding that, under the "common authority" theory, voluntary consent to search by the owner and driver of a vehicle is effective as to the passengers of that vehicle). Accordingly, the magistrate judge did not err in denying the motion to suppress the evidence.

Similarly, the magistrate judge correctly concluded that the statements Cardona sought to suppress were not made during the course of an interrogation and, therefore, did not require *Miranda* warnings. Interrogation is defined as either express questioning or its equivalent which includes words or actions that the officers know or should know are reasonably likely to elicit an incriminating response from a suspect. Generally, questions posed "to secure the personal history data necessary to complete the booking process" do not fall within this definition and are exempt from the *Miranda* requirements. *United States v. Broadus*, 7 F.3d 460, 464 (6th Cir.1993). Cardona asserts, however, that he was entitled to *Miranda* warnings when the police questioned him about his identity following the arrest, because he had originally given the police incorrect information about his identity. Because any response to such questions would reveal that he had given false information or perpetuate his misrepresentations, Cardona asserts, these questions would inevitably elicit incriminating information.[2]

Although Cardona's argument has an apparent logical appeal, this court is not convinced that the questions concerning Cardona's identity following his arrest were anything but "routine booking questions." *See Broadus*, 7 F.3d at 464. Accordingly, *Miranda* warnings were not required and the motion to suppress the statements was properly denied. The magistrate judge's order will be adopted.

### D. *Cardona's Motion to Sever*

In his final motion, Cardona requests severance pursuant to Federal Rule of Criminal Procedure 14. Cardona contends that, because Lopez intends to offer evidence in her defense that Cardona beat and/or coerced her into committing criminal activity, Cardona will be severely prejudiced in the eyes of a jury. Cardona further submits that this prejudice will be magnified because Lopez may not testify, depriving Cardona of an opportunity to cross examine her on this

element of her defense. Accordingly, Cardona concludes, relief from joinder is appropriate to preserve his right to a fair trial.

Rule 8 evinces a strong federal policy favoring joint trials of defendants who are indicted together. *Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993); *United States v. Warner*, 971 F.2d 1189, 1196 (6th Cir.1992). Joint trials are favored because they "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro*, 506 U.S. at 537, 113 S.Ct. at 937.

Despite this strong preference for joint trials, Rule 14 vests the district court with discretion to grant a severance or to "provide whatever other relief justice requires," if a defendant or the government is prejudiced by joinder. Fed.R.Crim.P. 14. The burden falls heavily upon the party seeking severance to demonstrate substantial prejudice from a joint trial. *United States v. Williams*, 711 F.2d 748, 751 (6th Cir.1983). Moreover, the district court's determination of prejudicial joinder questions is entitled to great deference. *United States v. Breinig*, 70 F.3d 850, 853 (6th Cir.1995).

Severance under Rule 14 is limited to situations where the movant demonstrates that "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 538, 113 S.Ct. at 938; *United States v. Odom*, 13 F.3d 949, 958 (6th Cir.1994). A defendant is not entitled to severance simply because a separate trial may enhance his chances for acquittal. *Warner*, 971 F.2d at 1196. In this regard, the sixth circuit has consistently held that the assertion of different defenses by co-defendants does not alone require severance. *United States v. Kendricks*, 623 F.2d 1165, 1168 (6th Cir.1980); *United States v. Vinson*, 606 F.2d 149, 154 (6th Cir.1979). Moreover, the sixth circuit has recently reaffirmed the principle articulated in *Zafiro* that "a mutually antagonistic defense is not prejudicial *per*

---

2. Testimony at the December 14, 1995 hearing on these motions revealed that Cardona was initially detained by the police officers on a charge of giving false information.

*se,* and Rule 14 does not mandate severance on that ground as a matter of law." *Breinig,* 70 F.3d at 853 (6th Cir.1995).

■■■ This case is on all fours with the recent sixth circuit holding in *United States v. Breinig,* 70 F.3d 850 (6th Cir.1995). In *Breinig,* the defendant, Norbert Breinig and his former wife, Joan Moore, were charged with tax evasion in violation of 26 U.S.C. § 7201. They were tried jointly and, at that trial, Moore presented evidence of diminished capacity to negate her mens rea. Moore's defense required the introduction of highly prejudicial evidence of Breinig's bad character, which would not have been admissible against Breinig were he tried alone. At the conclusion of the jury trial, Breinig was convicted and Moore was acquitted.

The sixth circuit reversed Breinig's conviction and sentence, concluding that it was an abuse of discretion to deny Breinig's pretrial motion for severance, because "the jury's consideration of categorically inadmissible evidence was manifestly prejudicial and unfairly so." *Id.* at 853. In so holding, the court recognized that Breinig's situation presented an "exceptional case" and limited its holding accordingly. The court reaffirmed that the decision to deny severance rests within the discretion of the trial judge and that a mutually antagonistic defense is not prejudicial *per se* for purposes of Rule 14. Because the evidence of bad character substantiating Moore's defense would not have been admissible against Breinig under any theory of the Federal Rules of Evidence on a trial for tax evasion, the court found that Breinig carried the heavy burden of demonstrating that he suffered compelling and unfair prejudice as a result of the joint trial.

Following the December 14, 1995 hearing on this motion, defendant Lopez volunteered to submit an affidavit outlining her proposed defense to the charges in the indictment. This court has conducted an *in camera* review of that affidavit and is satisfied that the theory of coercion and the testimony which Lopez intends to introduce will expose Cardona to the same degree of prejudice which justified the reversal in *Breinig.* Moreover, the proposed evidence of physical abuse and coercion would be inadmissible against Car-

dona if he were tried independently. *See Breinig,* 70 F.3d at ——. This court notes that less drastic measures, such as limiting instructions, will not suffice to cure this substantial risk of prejudice. *Zafiro,* 506 U.S. at 538, 113 S.Ct. at 938. Accordingly, Cardona's motion for severance under Rule 14 will be granted.

### ORDER

Therefore, it is hereby **ORDERED** that the defendants' motions to dismiss the indictment are **DENIED.**

**IT IS FURTHER ORDERED** that defendants' motions for disclosure of impeaching information are **DENIED** as moot.

**IT IS FURTHER ORDERED** that the July 26, 1995 Order entered by Magistrate Judge Goldman, denying Cardona's motion to suppress statements and motion to suppress evidence, is **AFFIRMED.**

**IT IS FURTHER ORDERED** that defendant Cardona's motion to sever trials is **GRANTED.**

**SO ORDERED.**